## Case No. 9,268.

### In re MASTERSON.

[4 N. B. R. 553 (Quarto, 180).] [1]

District Court, D. Rhode Island. Feb. 15, 1870.

BANKRUPTCY—DEPOSIT IN COURT—RIGHTS OF ASSIGNEE—OF MORTGAGEE—PETITION FOR DISTRIBUTION.

1. Where money was deposited in court to the credit of a person against whom a warrant for adjudication of bankruptcy had been issued, and the funds had thereby been lodged in court without prejudice to the rights of creditors or of a mortgagee, the legal intendment of such deposit would be that the rights of the assignee on the one side, and of the mortgagee on the other, should be adjudicated according to the law and the usage of the court.

[Cited in Ferguson v. Peckham, Case No. 4,-741.]

2. A petition to a court to order a distribution of a fund lodged in its registry, is not regarded as an action or suit within the meaning of the 2d section of the bankrupt law [of 1867 (14 Stat. 518)].

3. Ordered, that the petition must stand for a hearing on its merits.

In bankruptcy.

KNOWLES, District Judge. On the 19th of June, 1868, a warrant in bankruptcy was issued against one John Masterson, on the application of Sheldon, Kelly & Hale, creditors, and on the same day an auxiliary injunction was granted against said Masterson, and one John P. Cooney, and Doyle & Joslon, auctioneers, forbidding a sale by them, or either of them, of certain personal property, then advertised to be sold at auction on the 20th of June, in virtue of a mortgage conveyance from said Masterson to said Cooney, bearing date March 7th, 1868. Service of the injunction was made on the 20th, and the proposed sale postponed or abandoned, the property remaining, so far as appears, in the custody and charge of the mortgagee Cooney, the alleged bankrupt, Masterson, having absconded. On the return day of the warrant, the 27th of June, Masterson was adjudged a bankrupt on default; and on the same day it was agreed in writing between the petitioning creditors and the same Cooney, that the marshal or messenger should make sale of the said property at auction, at as early a day as he should see fit, the net "proceeds of sale to be brought into court, and held in lieu of the property." Under an order of court, pursuant to this agreement, the property was sold on the 2d of July by the marshal, who, on the 18th of July made return of his proceedings, paying into the registry as said net proceeds, three hundred and sixty-eight dollars and four cents. On the 28th of July said Cooney filed a petition to the court, representing that the mortgage aforesaid was a valid and unimpeachable lien upon the property described, and praying an order from the court that the aforesaid should be paid over to him out of

---

[1] [Reprinted by permission.]

the registry. So far as is shown by the record, this petition was not brought to the notice of the court until the 3d of February, 1869, when a hearing was indefinitely deferred at the instance of the petitioning creditors on account of the absence of a witness. Nor does it appear that action was afterwards invoked until the 1st of February, 1871, when a motion of the creditors, filed November 2d, 1870, that the said petition of Cooney be dismissed for want of jurisdiction, was called up for determination.

In support of the motion, the learned counsel cited as a binding and conclusive precedent, the opinion of this court, delivered in October last in Boutour v. Peckham [Case No. 1,707], dismissing a petition for want of jurisdiction, the court holding that by a suit in equity or by an action at law, and not by a petition merely, should the petitioner have sought redress or relief; electing to follow, as to this point, the rulings of Justice Nelson, Chief Justice Chase, and (as understood) of Justice Clifford, rather than that of Justice Swayne. And as this court has as yet seen no reason to retract or qualify its opinion in the case cited, it is manifest that the judgment in this case should be the same as was the judgment in that, if, as contended, the two cases are in contemplation of law the counterparts each of the other, of the same species as well as of the same genus.

Herein, however, I am constrained to differ with the learned counsel of the creditors. In the case of Boutour v. Peckham [supra], the property in question was in the hands of the assignee. Boutour being simply an outside creditor, claiming to have a valid lien upon the property, by virtue of unrecorded mortgages, for a demand against the bankrupt firm, the which demand he had not presented for registration. This petition was against both the assignee and a secured mortgagee, claiming the property as his under the mortgage, and praying a judgment of the court, establishing his claim, and an order to the assignee to surrender to him the property. This controversy between him and the respondents the court held was one of that species which the bankrupt act contemplates shall be settled by a suit in equity or action at law in either the district or the circuit court, with a right in either party to test the rulings of the district judge or of the circuit judge by an appeal or writ of error. Bankrupt Law, §§ 2, 8, 9. It was not, the court held, one of that other species which the law contemplated should be submitted by a simple petition to the court, to be passed upon summarily as it were by a district judge at chambers or in open court, subject only to the revisory action of a circuit judge "in term time or vacation," under the provisions of the 2d section of the bankrupt law, in relation to which Justice Clifford and Judge Shipley, in Littlefield v. Canal Co. [Case No. 8,400], thus spake:

"Appeals in equity suits and in causes of admiralty and maritime jurisdiction, vacate the respective decrees in the subordinate courts, and remove the whole record into the court of paramount jurisdiction; but nothing of the kind is done in a proceeding by petition under the 2d section of the bankrupt act. * * * Nor is the allegation by a petitioner that he is aggrieved, sufficient, unless it be also alleged in what the error consists, whether of law or fact, and the nature of the error should be distinctly stated for the information of the appellate court, and as a matter of notice to the opposite party. Appellate courts, even in appeals, proceed upon the ground that the decree in the subordinate court was correct, and the burden to show error is upon the appellant. The Baltimore. 8 Wall [75 U. S.] 378. Matters of fact as well as matters of law, may doubtless be revised in the circuit court; but it was not the intention of congress, in this form of proceeding, to give a party a second trial merely as such, but to secure to him an appellate tribunal for the re-examination and revision of the rulings, orders, and decrees of the district courts, and for the reversal of the same in case they are found to be erroneous."

In the case at bar, as is already shown, the property in question was, by agreement of the creditors and the mortgagee, sold by the messenger before the 21st of July, when an assignee was appointed and the proceeds deposited in the registry of the court, and in the registry has the money remained, unclaimed by any one save the petitioner. Not only has the money never yet passed into the hands of the assignee as assets of the bankrupt, but no claim to it has he ever asserted in any manner cognizable by the court, its legal and only custodian. The agreement, it will be noted, was not that the proceeds be paid over to the assignee as monies to which his title was conceded to be prima facie paramount, but were to be brought into court—i. e. paid into the registry, whence it could not be removed, as the parties must be presumed to have known, save upon an order of the court authorizing a check therefor, to be signed by the clerk as clerk, and countersigned by the district judge, as judge. The results of the proceedings were, in my judgment, simply to lodge the funds in the court, without prejudice to the rights of creditors or of the mortgagee, an essential part of the agreement between the parties being, in legal intendment, that the claim of the assignee on the one side and of the mortgagee on the other, should be adjudicated by the court according to the law and usage of the court in cases of deposits in its registry. The money, it appears, was deposited to the credit of John Masterson, and on the appointment of an assignee, that officer was of course vested with all the rights of Masterson and of his creditors in the fund, as it then was in the registry, subject to the claim of the mort-

gagee, Cooney. Either party could at any time, by petition or motion, prefer his claim to it, whereupon it would become the court's duty, after causing proper notice to be given to whomsoever it might deem proper, to pass upon such petition or motion. The dismissal of it would not necessarily establish the title of any contesting party. The court might well adjudge that the petitioner, A, had failed to establish his right, and dismiss his petition, retaining custody of the fund until some other petitioner, maybe a second, maybe a fiftieth, should establish his right satisfactorily to the court.

Accordingly, I must hold that, by this agreement, sanctioned as it was by an order of the court, the parties submitted their matters in dispute to the decision of the court, upon petition to be filed, waiving their respective rights to institute proceedings in equity or at law, either in the district or the circuit court. Such, obviously, was the intent of the parties. At the date of that agreement, the rulings of Justice Swayne (Bill v. Beckwith [Case No. 1,406]), were recognized as authoritative by the bar in this district, and redress or relief in nearly all cases arising under the bankrupt law was sought by petition, that being, evidently, as held by that learned judge, "a cheaper, speedier, and more simple mode" than proceedings at law or in equity, according to established usages and existing laws. And in harmony with this hypothesis has been the conduct of the parties. Within a week after the deposit of the money, and the appointment of an assignee, the mortgagee, Cooney, files his petition to the court, and on the 3d of February, 1869, the creditors, without objection to the form of proceedings, ask delay of trial, that they may procure the evidence of one of the petitioning creditors; and thereafter, until the 2d of November, 1870, nearly two years, they permit the case to stand upon a docket, which was actually or constructively called for trial on the first Wednesday of every month, without motion to the court, or suggestion of error of process, or of misapprehension of rights, to the petitioner. These are not insignificant facts, regarded as bearing upon the intent of the parties to the agreement of June 27, 1868; nor is it an insignificant fact, that at this late day it may be questioned if either the assignee or petitioner can bring any action or suit. The bankrupt law (second section) expressly bars all actions or suits by or against any assignee, unless brought within two years from the time the cause of action accrued.

The motion or petition of the creditors, Sheldon, Kelly & Hale, that the petition of Cooney, mortgagee, be dismissed for want of jurisdiction, is overruled or denied, and the petition last named must stand for hearing upon its merits. When the assignee of the bankrupt, Masterson, shall see fit to file his petition that the money in the registry be paid over to him, it will become the court's duty to pass upon his claims, as against Cooney, as well as all other contestants. A petition to a court to order a distribution of a fund lodged in its registry, I do not, as at present advised, regard as an action or suit within the meaning of the clause above quoted from the 2d section of the bankrupt law.